IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 04-475-01 |
| | : | |
| THOMAS EARL WILLIAMS | | |

GOVERNMENT'S SENTENCING MEMORANDUM

      The United States of America, by its attorneys, Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, and Floyd J. Miller, Assistant United States Attorney for the District, respectfully submits this Sentencing Memorandum regarding defendant Thomas Earl Williams, who is scheduled to be sentenced on December 19, 2005. For the reasons provided below, the government recommends a sentence within the guideline range of the Guideline range of 168 to 210 months.

I.    BACKGROUND

      On August 17, 2005 a federal grand jury in the Eastern District of Pennsylvania returned a ten-count indictment, charging Thomas Earl Williams, James Brown, Deloris Parker, Janet Street, Charlene, Lavar Parker and James Rivers with conspiracy to make false statements to a federally licensed firearms dealer, in violation of 18 U.S.C. Section 924(a)(1)(A) (Counts Three through Seven); providing false information to a federal firearms licensee, in violation of 18 U.S.C. Section 922(A0(6) (Counts Two and Eight); felon in possession of a firearm, in violation of 18 U.S.C. Section 922(2)(g)(Counts Nine and Ten). A notice of forfeiture was also included for all of the defendants. A notice of additional factors was also included for Thomas Earl Williams,

-1-

James Brown, Charlene Parker and Janet Street.  Based upon the change of colloquy for all of the other defendants, defendant Williams was the ring leader of the conspiracy.

## II.     SENTENCING CALCULATION

### A.     Statutory Maximum Sentence

The maximum sentence that may be imposed on defendant 25 years imprisonment, a maximum fine of $750,000 and 3 years of supervised release.  The maximum sentence was computed in the following manner:

#### Count One

Conspiracy to make false statements to a federally licensed firearms dealer (5 years imprisonment/$250,000 fine (a class D felony)

#### Counts Two and Eight

Providing false information to a federally firearms licensee (10 years imprisonment/$250,000 fine) (Class C felonies)

#### Counts Three through Seven

Making false statements to a federally licensed firearms dealer (10 years imprisonment/$250,000 fine (Class C felonies

**B.     Sentencing Guidelines Calculation**

Base Offense Level..............................................................................................24

S.O.C. (8 to 24 guns).............................................................................................4

Role Adjustment.....................................................................................................4

Obstruction (lying to federal agent).......................................................................2

**Total Offense Level**..............................................................................34

Criminal History Category...................................................................................II

Guideline Range................................................................168 to 210 months

The government urges that the Court impose a sentence within the final guideline range.

In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004).  The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury.  As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory."  <u>Booker</u>, 125 S. Ct. at 757.  This ruling results in a system in which the sentencing court, while informed by the Guidelines, may impose any sentence within the statutory maximum penalty for the offense of conviction.  The sentence will be subject to review by the Court of Appeals for "unreasonableness."  <u>Id.</u> at 765.

In the wake of Booker, this Court must make a correct calculation under the existing Sentencing Guidelines, and then consider the final guideline calculation when determining the sentence to be imposed. As is plainly set forth in Booker, the Guidelines sentence is not to be based solely on facts found by a jury beyond a reasonable doubt. See United States v. Crosby, 397 F.3d 103, 115 (2d Cir. 2005) ("a sentencing judge would . . . violate section 3553(a) by limiting consideration of the applicable Guidelines range to the facts found by the jury or admitted by the defendant, instead of considering the applicable Guidelines range, as required by subsection 3553(a)(4), based on the facts found by the court."); see also United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005) (Booker contemplates that, with the mandatory use of the Guidelines excised, the Sixth Amendment will not impede a sentencing judge from finding all facts relevant to sentencing. The sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts relevant to the determination of a non-Guidelines sentence."). Justice Breyer's majority opinion directed that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Id. at 767; see also United States v. Crosby, 397 F.3d 103, 112 (2d Cir. 2005) ("[t]he applicable Guidelines range is normally to be determined in the same manner as before Booker/Fanfan.").[1]

---

[1] The courts of appeals have generally stated that the proper sentencing procedure after Booker is for the district court first to calculate the Guidelines sentence and then to consider the other factors listed in 18 U.S.C. § 3553(a). See, e.g., Crosby, 397 F.3d at 111, 112 ("In order to fulfill this statutory duty to "consider" the Guidelines, a sentencing judge will normally have to determine the applicable Guidelines range. * * * . Once an applicable Guidelines range has been determined, the sentencing judge will have the duty, imposed by subsection 3553(a)(4), to 'consider' it, along with all of the factors listed in section 3553(a)."); United States v. Hughes, 396 F.3d 374, 378-79 (4th Cir. 2005) ("Consistent with the remedial scheme set forth in Booker, a district court shall first calculate (after making the appropriate findings of fact) the range

The Third Circuit has affirmed the trial court's authority, following <u>Booker</u>, to determine the appropriate Guideline range under the preponderance-of-the-evidence standard. In remanding a case for resentencing, where the original sentence had been applied before <u>Booker</u> was decided, the Court stated:

> We . . . note that the District Court is free to engage in precisely the same exercise in judicial fact finding as it did in February 2003, so long as such fact finding is consistent with <u>Booker</u>. <u>Cf</u>. <u>United States v. Antonakopoulos</u>, 399 F.3d 68, 75 (1st Cir.2005) ("The error is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system.").

<u>United States v. Miller</u>, 2005 WL 1791999, at *4 (3d Cir. July 29, 2005).

The position of the United States is that, absent highly unusual circumstances, the sentence in a criminal case should fall within the guideline range as determined by the Court. This view is shared by Congress and the Supreme Court. As every Supreme Court justice in the various opinions in <u>Booker</u> recognized, the Guidelines carry out the express national policy, as articulated by Congress, that sentences be uniform across the country to the extent possible and be based on the offender's actual conduct and history. <u>See, e.g.</u>, <u>Booker</u>, 125 S. Ct. at 761 (majority

---

prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence."). As noted below, the government submits that the factors in Section 3553(a) have, to a large extent, been taken into account by the Sentencing Commission in its development of the Sentencing Guidelines, and that even a separate accounting of these factors should, in all but the most exceptional case, result in a sentence within the Guidelines range. <u>Cf</u>. <u>Mares</u>, 402 F.3d at 519 (noting that if a sentencing judge exercises discretion to impose a sentence within the Guidelines range, the appellate court on review "will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines" and it will be "rare" for a reviewing court to say the sentence is unreasonable).

opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 744 (same) ("Congress' basic statutory goal of diminishing sentencing disparity depends for its success upon judicial efforts to determine, and to base punishment upon, the real conduct that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of nearly 20 years of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address all of the considerations relevant to sentencing, as articulated in 18 U.S.C. § 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ."

Thus, fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing, and should occur absent unusual circumstances.  Since Booker, the courts of appeals have emphasized the continued importance of the Sentencing Guidelines.  As the Second Circuit Court of Appeals explained in United States v. Crosby, "These principles change the Guidelines from being mandatory to being advisory, but it is important to bear in mind that Booker/Fanfan and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge.  Thus, it would be a mistake to think that, after Booker/Fanfan, district judges may return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum."  Crosby, 397 F.3d at 113.  The Court of Appeals for the Fifth Circuit also noted in Mares, "Even in the discretionary sentencing system established by Booker/Fanfan, a sentencing court must still carefully consider the detailed statutory scheme created by the [Sentencing Reform Act] and the Guidelines, which are designed to guide the judge toward a fair sentence while avoiding serious sentence disparity."  402 F.3d at 518-19.  See also United States v. Paladino, 401 F.3d 471, 480 (7th Cir. 2005) ("Under the new sentencing regime the judge must justify departing from the guidelines, and the justification has to be reasonable.").

A recent decision of the Seventh Circuit in defining the new sentencing regime is instructive.  That court stated:

> The Sentencing Guidelines represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses.  When the Supreme Court directed the federal courts to continue using the Guidelines as a source of advice for proper sentences, it expected that many (perhaps most) sentences would continue to reflect the results obtained through an application of the Guidelines.  But "many or most" sentences cannot mean "all" sentences.  Put differently, Booker does not hold that a Guidelines sentence must conclusively be presumed to be reasonable. . . .

> But while a per se or conclusively presumed reasonableness test would undo the Supreme Court's merits analysis in Booker, a clean slate that ignores the proper Guidelines range would be inconsistent with the remedial opinion. As Booker held, "the district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker, 125 S.Ct. at 767. The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country. "The Sentencing Commission will continue to collect and study [district court] and appellate court decisionmaking. It will continue to modify its Guidelines in light of what it learns, thereby encouraging what it finds to be better sentencing practices." Id. at 766. The best way to express the new balance, in our view, is to acknowledge that any sentence that is properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness. . . .
>
> The defendant can rebut this presumption only by demonstrating that his or her sentence is unreasonable when measured against the factors set forth in § 3553(a).

United States v. Mykytiuk, 2005 WL 1592956, at *1-2 (7th Cir. July 7, 2005).

The government also commends to the Court's attention the scholarly opinion in United States v. Wilson, 350 F. Supp. 2d 910 (D. Utah 2005), which agreed that, absent unusual circumstances, a sentence should be imposed within the Sentencing Guidelines range. In his assessment in Wilson, on the day after Booker was decided, Judge Cassell explained at length the reasons supporting this view. As he stated, the Guidelines represent the product of an expert commission, which has studied the sentencing process at great length, under the specific mandate of Congress to fashion recommended sentences which carry out the purposes defined by Congress. The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to Congressional preference. Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the

Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at 912.[2]

The United States submits that a sentence within the guideline range is presumptively reasonable, and accommodates the Congressional purpose, affirmed by the Supreme Court, of obtaining fair sentences which are uniform to the extent possible.  As the Fifth Circuit stated in Mares,

> If the sentencing judge exercises her discretion to impose a sentence within a properly calculated Guideline range, in our reasonableness review we will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines.  Given the deference due the sentencing judge's discretion under the Booker/Fanfan regime, it will be rare for a reviewing court to say such a sentence is "unreasonable."

402 F.3d at 519.  The government anticipates that only sentences outside the guideline range will be subject to appellate scrutiny for reasonableness in light of the Congressional mandate.  Cf. id. (noting that "[w]hen the judge exercises her discretion to impose a sentence within the Guideline range and states for the record that she is doing so, little explanation is required," but when the judge gives a non-Guideline sentence, "she should carefully articulate the reasons she concludes

---

[2] In United States v. Ranum, 353 F. Supp. 2d 984 (E.D. Wis. 2005), Judge Adelman rejected Judge Cassell's approach, claiming that it is "inconsistent" with the holdings in Booker. The government respectfully disagrees with Judge Adelman's approach.  As Judge Cassell noted in a subsequent opinion in United States v. Wilson, 355 F. Supp. 2d 1269 (D. Utah 2005), the Ranum approach ignores the "carefully calibrated" work of the Commission in determining which offender characteristics determine a sentence.  Id. at 1275.  Moreover, Ranum gives insufficient consideration to the importance of consistent sentencing and avoiding sentencing disparities.  As Judge Cassell recognized, "only close adherence to the Guidelines offers any prospect of treating similarly-situated offenders equally," and thus assuring fidelity to the manifest Congressional purpose. Id.  Moreover, the opinion of the Wisconsin court appears inconsistent with later decisions of its governing Court of Appeals, the Seventh Circuit, as noted above.

that the sentence she has selected is appropriate for that defendant" because "[s]uch reasons are essential to permit this court to review the sentence for reasonableness as directed by Booker.").

In this case, as explained further below, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant within the Guidelines range calculated in the PSR.

## III.     GOVERNMENT'S RECOMMENDATION

As set forth in the PSR, with an offense level of 34 and a criminal history category of II, defendant falls within the sentencing range of 168 to 210 months. The government respectfully recommends that the Court impose a period of incarceration within this Guidelines range. Such a sentence would recognize [the seriousness of defendant's offense conduct, the defendant's criminal recidivism, and his history of probation and parole violations.

Defendant Williams was the mastermind of the conspiracy at issue in this case. Some of the guns which he caused his coconspirators to purchase, more than likely, ended up in the possession of criminals. Indeed, it is possible that some of the guns may have been used to commit murders in Philadelphia and the surrounding metropolitan area.

   For all of the above reasons, the government respectfully recommends that the Court impose a period of incarceration within the Guidelines range established by the PSR.

               Respectfully submitted,

               PATRICK L. MEEHAN
               United States Attorney


               _____
               FLOYD J. MILLER
               Assistant United States Attorney

Date:   December 19, 2005.

CERTIFICATE OF SERVICE

_____I hereby certify that on this date a true and correct copy of the Government's Sentencing Memorandum was served on counsel for the defendant by fax to:

>Howard D. Popper, Esquire
>Popper & Yatvin
>230 South Broad Street
>Suite 503
>Philadelphia, PA 19102

_____
FLOYD J. MILLER

DATED_____